Fred SHORES Jr., Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al. Defendants.**

**No. CIV.A.98–2728(GK).**

United States District Court, District of Columbia.

Feb. 4, 2002.

Fred Shores, Jr., Atlanta, GA, pro se.

Wyneva Johnson, Paul S. Padda, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff, an inmate proceeding pro se, brings this lawsuit in order to obtain access to certain documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, from Defendants Federal Bureau of Inves-

tigation, United States Department of Justice (Office of Information and Privacy), and United States of America. In response, Defendants have filed a Motion for Summary Judgment [# 40]. Defendants ask the Court to rule that they conducted an adequate search and that the requested documents are exempt from disclosure under the Privacy Act and FOIA Exemptions 2, 7(C), 7(D), 7(E), and 7(F). Upon consideration of the Motion, all related pleadings, and the record herein, Defendants' Motion is **granted.**

## I. FACTUAL BACKGROUND

Between November 23, 1993 and February 4, 1998, Plaintiff made four requests for documents allegedly held by Defendants. The documents at issue in this case relate to Plaintiff's request for all documents concerning himself located in the Federal Bureau of Investigation's ("FBI") Norfolk, Virginia and Myrtle Beach, South Carolina offices. *See* Compl. ¶¶ 5–7.

In a letter dated May 6, 1999, FBI Headquarters informed Plaintiff that, in response to his four requests,[1] 454 pages of 699 reviewed records had been processed and would be released after Plaintiff reimbursed it for copying expenses. *See id.* ¶ 18. After Plaintiff paid the copying expenses, he received the 454 pages in a letter dated May 21, 1999. *See id.* ¶ 20.

The May 21, 1999 letter also indicated that 245 of 699 pages had been withheld pursuant to 5 U.S.C. § 552a (j)(2) and 5 U.S.C. § 552(b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F). *See id.*[2]

In his Complaint, Plaintiff seeks unredacted copies of all documents requested from the FBI's Norfolk, Virginia and Myrtle Beach, South Carolina offices. Defendants now move for summary judgment.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering whether there is a triable issue of fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505. Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C.Cir. 1992) (*quoting Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982)); *Washington Post Co. v. United States Dep't of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989).

## III. ANALYSIS

### A. Adequacy of Search

FOIA requires an agency responding to a FOIA request to conduct a

---

1. In the letter, FBI Headquarters responded to all four of Plaintiff's requests, including those relating to Norfolk and Myrtle Beach.

2. Defendants indicated that their search yielded 945 actual pages, of which 246 were duplicates. *See* Hodes Decl. III, at 3. The letter further indicated that Deleted Page Information Sheets, which explained the grounds for withholding, had been inserted in lieu of the withheld pages. *See id.*

reasonable search using methods which can be reasonably expected to produce the information requested. *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir.1998). The burden of proof is on the agency to show that its search was reasonably calculated to uncover all relevant documents. *See Steinberg v. United States Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994). In meeting this burden, the agency may submit affidavits or declarations that explain, in reasonable detail, the scope and method of the agency's search. "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982).

■ To document their search, Defendants submitted the Third Declaration of Scott A. Hodes, Acting Chief of the Litigation Unit of the FBI's Freedom of Information–Privacy Acts Section. Plaintiff claims that Defendants refused to send him documents responsive to his request. However, a search is not inadequate simply because it failed to yield every document that Plaintiff seeks. *See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.,* 844 F.Supp. 770, 776, 777 n. 4 (D.D.C.1993). Significantly, Plaintiff does not challenge the scope and method of Defendants' search for documents. Therefore, the Court rejects Plaintiff's argument, and grants Defendants' Motion as to the adequacy of their search for responsive documents.

### B. Privacy Act Exemption

■ Section (j)(2) of the Privacy Act allows an agency to exempt any of its record systems from the Privacy Act's ac-cess provision under section (d)(1). *See* 5 U.S.C. § 552a (j)(2) & (d)(1). The United States Department of Justice, of which the FBI is a component, has exempted the FBI's Central Records System from access under 28 C.F.R. §§ 16.96(a) and (b)(2)(i). The records at issue were placed in the Central Records System, as part of an FBI criminal investigation. Plaintiff asserts, without providing any evidence, that responsive records were withheld. However, courts presume agency declarations to be made in good faith, and speculative claims may not rebut such a presumption. *See SafeCard Servs. v. Securities and Exchange Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991). Thus, Plaintiff has failed to demonstrate that the documents were not exempt under section (j)(2) of the Privacy Act, and the Court will grant Defendants' Motion as to the Privacy Act.

### C. FOIA Exemption 2

■ Exemption 2 of FOIA exempts from disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies if a requested document is predominantly internal and its disclosure would impede law enforcement activities. *See Crooker v. Bureau of Alcohol, Tobacco, and Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981).

■ Defendants argue that they may withhold the symbol and file numbers of informants from requested documents under Exemption 2 of FOIA, 5 U.S.C. § 552(b)(2).[3] Defendants released the documents at issue but withheld all information relating to informant symbol and file numbers. Symbol numbers are used

---

**3.** Defendants have also withheld this information under Exemption 7(D), which will be discussed *infra.*

to conceal the identity of confidential informants who report information to the FBI on a regular basis under an express grant of confidentiality. *See* Def. Motion, at 6. Defendants argue that if a particular file or symbol were released, the identity of the informant could be deduced. In response, Plaintiff asserts that this argument should not prevail because he has already deduced the identities of the informants. Plaintiff's assertion, even if true, fails to refute Defendants' argument. By compromising the identities of government informants, disclosure of symbol and file numbers could deter individuals from cooperating with the government in future investigations. Since such disclosure could impede law enforcement activities, Defendants may withhold symbol and file numbers under Exemption 2. *See Crooker*, 670 F.2d at 1074. Therefore, the Court grants Defendants' Motion as to Exemption 2.

### D. FOIA Exemption 7(C)

Exemption 7(C) of FOIA protects information compiled for law enforcement purposes which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(C). To determine whether Plaintiff is entitled to the withheld information, the Court must balance the privacy interests of those individuals whose information might be disclosed and the public's interest in disclosure of that information. *See Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 91 (D.C.Cir. 1984).

Defendants have withheld information under Exemptions 7(C)–1, 7(C)–2, 7(C)–3, 7(C)–4, 7(C)–5, 7(C)–6, 7(C)–7, and 7(C)–8. Plaintiff does not oppose the withholding of information under 7(C)–3. *See* Pl. Decl., at 13.

Defendants invoked the following exemptions: 7(C)–1 to withhold the names and/or identifying information regarding FBI Special Agents involved in investigations mentioned in the documents requested; 7(C)–2 to withhold the names and personal information that would identify third parties of investigative interest to the FBI; 7(C)–4 to withhold the names of individuals who knew Plaintiff that were interviewed by the FBI; 7(C)–5 to withhold the names and identifying information of third parties who were incidentally mentioned within the investigatory records concerning Plaintiff; 7(C)–6 to withhold the names and/or identifying information of non-FBI federal law enforcement officers; 7(C)–7 to withhold the names and/or identifying information regarding three individuals who are considered cooperating witnesses of the government; and 7(C)–8 to withhold the identity of a telephone company employee who assisted in the investigation of Plaintiff.

Plaintiff claims that the specific exemptions cited above should not apply for two reasons. First, he claims that the privacy interests of the affected individuals have been extinguished because he already knows their identities. However, the fact that Plaintiff may deduce the identities of individuals through other means or that their identities have already been disclosed does *not* diminish their privacy interests. *See Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 768 (D.C.Cir.1990); *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1491 (D.C.Cir.1984).

Second, Plaintiff claims that certain FBI Special Agents should not have their identities protected because they have committed unlawful acts against him. However, Plaintiff proffers no evidence to corroborate his unsubstantiated assertion. Therefore, Plaintiff has failed to demonstrate that the public's interest in disclosure of the withheld information outweighs the privacy interests of the affected individu-

als. *See Stern*, 737 F.2d at 91. Accordingly, the Court grants Defendants' Motion as to Exemption 7(C).

### E. FOIA Exemption 7(D)

 Exemption 7(D) of FOIA exempts from disclosure "[information that] could reasonably be expected to disclose the identity of a confidential source ... which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Under Exemption 7(D), one must examine "whether the particular *source* spoke with an understanding that the communication would remain confidential." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 169, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (emphasis in original). Even without an express assurance of confidentiality, the identity of an informant may be protected "under circumstances from which such an assurance could reasonably be inferred." *See Landano*, 508 U.S. at 171, 113 S.Ct. 2014. Whether an implied confidentiality exists depends on "the nature of the crime ... and the source's relation to it." *Id.* at 179, 113 S.Ct. 2014.

 Defendants have invoked Exemption 7(D) to withhold the names and identifying information of three cooperating witnesses. *See* Def. Motion, at 13–14. One of those witnesses received an express assurance of confidentiality, and thus his or her identity and/or identifying information may be withheld. *See* Def. Motion, at 13–14; *Landano*, 508 U.S. at 169, 113 S.Ct. 2014. Defendants argue that the remaining two witnesses received an implied assurance of confidentiality. *See* Def. Motion, at 14. According to Defendants, all three witnesses had knowledge of a murder of which Plaintiff was convicted, and Plaintiff subsequently attempted to procure the murder of a family member of one of the witnesses. *See id.* Given such circumstances, the Court concludes that the remaining two witnesses received an implied assurance of confidentiality. *See Landano*, 508 U.S. at 179, 113 S.Ct. 2014. Therefore, Defendants may invoke Exemption 7(D) to withhold the identities and/or identifying information of all three cooperating witnesses. Accordingly, the Court grants Defendants' Motion as to Exemption 7(D).

### F. FOIA Exemption 7(E)

 Exemption 7(E) of FOIA exempts from disclosure information compiled for law enforcement purposes if such disclosure

would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). Defendants invoked Exemption 7(E)–1 to withhold numerical ratings which assessed the effectiveness of investigative techniques used during the FBI's investigation of Plaintiff. *See* Def. Motion, at 15. If the ratings were released, it would enable Plaintiff and others involved in criminal investigations to take advantage of the FBI evaluations by changing their modus operandi, and thereby circumvent the law. *See* Hodes Decl. III ¶ 48; 5 U.S.C. § 552(b)(7)(E). Therefore, Defendants may withhold the numerical ratings from release under Exemption 7(E)–1. *See* 5 U.S.C. § 552(b)(7)(E).

Defendants invoked Exemption 7(E)–2 to withhold all information concerning the polygraph examination of one person who

was of investigative interest to the FBI. Plaintiff is not mentioned during this examination. *See* Def. Motion, at 16. The information withheld consists of lists of questions asked of the third-party examiner, as well as specific data concerning the equipment and ratings used in connection with a polygraph examination. *See id.* If Plaintiff or others involved in criminal investigations obtained this information, they could defeat the effectiveness of any polygraph examinations that they might undergo in the future, and thereby circumvent the law. *See* 5 U.S.C. § 552(b)(7)(E). Therefore, Defendants may withhold the polygraph information under Exemption 7(E)–2.

Defendants invoked Exemption 7(E)–3 to withhold information concerning the telephone system at Leavenworth Prison. That telephone system was tapped during the FBI's investigation of Plaintiff. *See* Def. Motion, at 16. By learning details of the surveillance operations at a prison, Plaintiff, an inmate convicted of murder, could circumvent the effectiveness of law enforcement operations. *See* 5 U.S.C. § 552(b)(7)(E). Therefore, Defendants may withhold the telephone system information under Exemption 7(E)–3. Accordingly, the Court grants Defendants' Motion as to Exemption 7(E).

### G. FOIA Exemption 7(F)

█ Exemption 7(F) of FOIA permits the withholding of information compiled for law enforcement purposes if disclosure "could reasonably be expected to endanger [an individual's] life or physical safety." 5 U.S.C. § 552(b)(7)(F). Although this exemption applies equally to information subject to Exemption 7(C), it does *not* require any balancing test. Defendants invoke Exemption 7(F)–1 to withhold the names and/or identifying information concerning three cooperating witnesses as well as others who were interviewed concerning Plaintiff. *See* Hodes Decl. III ¶ 54. According to Defendants, the information obtained from one of those witnesses led to the conviction of Plaintiff for murder and prompted Plaintiff to attempt to have a member of that witness' family murdered. *See* Def. Motion, at 17. In light of Plaintiff's conviction for murder and attempted retaliation against a key witness, Defendants may withhold the relevant documents under Exemption 7(F). Accordingly, the Court grants Defendants' Motion as to Exemption 7(F).[4]

### H. Plaintiff's Omnibus Arguments

█ Seeking to defeat summary judgment, Plaintiff alleges that Defendants have acted in bad faith, and therefore the Court should review unredacted copies of all requested documents *in camera.* It is true that a court may undertake an *in camera* review if "there is evidence of bad faith on the part of the agency." *Accuracy in Media, Inc. v. Nat'l Park Serv.,* 194 F.3d 120, 124–25 (D.C.Cir.1999). To this end, Plaintiff asserts that Defendants framed him for murder. In addition, he alleges that Defendants have delayed and obstructed his document requests, and

---

4. FOIA requires that if a document contains information exempt from disclosure, any "reasonably segregable" information that is not exempt from disclosure must be disclosed. 5 U.S.C. § 552(b). Our Court of Appeals has held that a District Court adjudicating a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte.*" *Trans–Pacific Policing Agreement v. United States Customs Serv.,* 177 F.3d 1022, 1028 (D.C.Cir.

1999). In this case, Defendants assert, and Plaintiff does not dispute, that they have released all "reasonably segregable" information. *See* Def. Supplemental Brief, at 2 (*citing* Hodes Decl. III ¶¶ 7, 39, 11–15, 44–46, 21–24, 27–29, 34–38, 41–43, 54–55). Therefore, the Court concludes that Defendants have released all reasonably segregable information. *See Trans–Pacific Policing Agreement,* 177 F.3d at 1028.

thus frustrated his efforts to prove his innocence.

 Plaintiff proffers no corroborating evidence that Defendants framed him for murder. Moreover, the Court finds that Defendants responded promptly to Plaintiff's inquiries about the status of his requests, and that any delays in the actual processing of his document requests were not unreasonable.[5] Therefore, the Court rejects Plaintiff's request for an *in camera* review of documents.

 Finally, Plaintiff argues that he is entitled to unredacted copies of certain documents because some or all of their contents have already been made public. Our Court of Appeals has held that the government "may not rely on an otherwise valid exemption to justify with- holding information that is already in the 'public domain.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C.Cir.2001). To invoke the public domain doctrine, the specific information requested "must have already been 'disclosed and preserved in a permanent public record.'" *Id.* (*quoting Davis v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C.Cir.1992)). The party seeking disclosure bears the initial burden of production; to satisfy this burden, Plaintiff must "point[ ] to *specific* information *in the public domain* that appears to duplicate that being withheld." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C.Cir.1999) (emphasis added).

However, Plaintiff fails to demonstrate that *any* of the documents he seeks have actually entered the public domain.[6] Con-

---

**5.** Plaintiff did not object to or deny the accuracy of the following facts contained in Defendants Statement of Material Facts As to Which There Is no Genuine Issue. *See* Fed. R.Civ.P. 56(e). In a letter dated July 5, 1996, the FBI's Norfolk office acknowledged receipt of Plaintiff's letter and notified him that it would conduct a search responsive to his request. *See* Def. Statement of Material Facts ¶ 5. In a letter dated July 15, 1996, the Norfolk office indicated to Plaintiff that it had found one investigative file responsive to his request, and that his request would be forwarded to FBI Headquarters. *See id.* ¶ 6. In a subsequent letter dated August 21, 1996, the Norfolk office indicated to Plaintiff that FBI Headquarters would process his request. *See id.* ¶ 8.

In a letter dated September 3, 1996, FBI Headquarters acknowledged receipt of Plaintiff's Norfolk request and advised Plaintiff that there would be a delay in processing his request because of the volume of such requests received by the FBI. *See id.* ¶ 9. The letter also indicated that delays of two years were not "uncommon". *Id.* Subsequently, in a letter dated February 25, 1997, FBI Headquarters advised Plaintiff to respond in thirty days if he sought to continue his Norfolk request. *See id.* ¶ 10. Three days later, Plaintiff indicated that he did seek to continue his Norfolk request. *See id.* ¶ 11.

In a letter dated February 4, 1998, Plaintiff requested all records concerning himself from the FBI's Myrtle Beach, South Carolina office. *See id.* ¶ 13. In another letter that same day, Plaintiff appealed to the United States Department of Justice's Office of Information and Privacy ("DOJ/OIP") with regard to his request to the FBI's Norfolk office. *See id.* ¶ 14. In a letter dated February 19, 1998, DOJ/OIP acknowledged receipt of his administrative complaint and indicated that there would be a delay in the handling of his appeal. *See id.* ¶ 16. Subsequently, DOJ/OIP notified Plaintiff that it could not adjudicate his appeal until the FBI formally denied his request. *See id.* ¶ 17.

**6.** Plaintiff claims that a document from which information was withheld is identical to Government Exhibit 33 introduced at his murder trial. *See* Pl. Opp., Shores Decl., at 10 (*citing* Hodes Decl. III, Attach. A, 644). However, Plaintiff has not produced this purported Exhibit 33, and thus the Court cannot verify his claim. Moreover, Plaintiff does not indicate whether the purported exhibit was actually *entered* into evidence during his trial. *See Cottone*, 193 F.3d at 554 (only items entered into evidence during trial belong to the public domain).

sequently, Plaintiff has not met his burden of production, and may not receive any documents under the public domain doctrine. *See Cottone,* 193 F.3d at 554; *Students Against Genocide,* 257 F.3d at 836. Therefore, the Court denies Plaintiff's request for unredacted documents.

## IV. CONCLUSION

For the foregoing reasons, the Court **grants** Defendants' Motion for Summary Judgment.

An appropriate Order will issue with this Opinion.